IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00375-CV

 

Sherman Acquisition II LP,

                                                                      Appellant

 v.

 

William D. Graham,

                                                                      Appellee

 

 

 



From the County Court at Law No
1

McLennan County, Texas

Trial Court No. 20050157CV1

 



ORDER WITHDRAWING OpinionS AND JUDGMENT



 

The opinions and judgment
dated October 4, 2006 are withdrawn, and the opinions and judgment dated
October 18, 2006, are substituted therefor.

 

PER CURIAM

 

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

Order
delivered and filed October 18, 2006

Do
not publish 

 






                                                                                                    

O P I N I O N
                                                                                                    

      Appellant Marquez appeals his conviction for murder for which he was sentenced to "life"
in the Texas Department of Criminal Justice and assessed a of $10,000 fine.
      On March 26, 1992, Cecilia Reyes was employed at the Fiesta food mart in southwest
Houston. She had been married four years, was pregnant, and was deeply in love with her
husband. She got off work at 9:30 p.m. and was seen walking toward her van in the parking lot. 
This was the last time she was seen alive. When she did not come home her husband made calls
trying to find her and reported her missing to the police.
       Appellant Marquez was a regular customer at Fiesta. He had been infatuated with Cecilia
and two other female clerks. 
      On March 27, 1992, a person working on the side of Road 290 found a box containing the
torso of Cecilia, minus her head, legs, and arms. Appellant became a suspect; blood of Cecilia's
type was found in Appellant's apartment and a blanket, identified as belonging to Appellant, was
wrapped around her torso when it was found. Thereafter Appellant admitted that he killed Cecilia
and led police to two other boxes containing her head, arms, and legs. An autopsy showed that
she was killed by being stabbed in the neck.
      Appellant was indicted for the death by stabbing her with a deadly weapon. He was convicted
of her murder and sentenced to life in prison plus a fine. He appeals on twelve points of error.



      Points one, two, and three assert that the trial court denied Appellant's Batson motion without
requiring the prosecutor to articulate race-neutral reasons for its peremptory strikes. Batson v.
Kentucky, 476 U.S. 79 (1986). This court found merit to this, abated the appeal, and remanded
the cause to the trial court to conduct a full retrospective Batson hearing. Emerson v. State, 820
S.W.2d 802, 805 (Tex. Crim. App. 1991); Marquez v. State, No. 10-93-101-CR (Tex.
App.—Waco, May 18, 1994) (abatement order, not designated for publication). The trial court
conducted such hearing and found that the reasons proffered by the State for excluding, by
peremptory challenges, jurors 6, 16, and 33 were race-neutral reasons and denied Appellant's
Batson challenge. A supplemental statement of facts of this hearing is before us. Points one, two,
and three are moot and are overruled.
      Point four contends the trial court committed reversible error by failing to instruct the jury
on the lesser-included offense of involuntary manslaughter; and point five contends the trial court
committed reversible error by partially instructing the jury on involuntary manslaughter and then
instructing the jury to disregard the previous charge inasmuch as this about face constituted an
impermissible comment on the evidence.
      In Appellant's statement received in evidence, he contended that: (1) he had an affair with
Cecilia; (2) she was in his apartment on the night of March 26, 1992; (3) they argued; (4) he
pushed her; and (5) she hit her head on the edge of a table and was killed. Appellant then stated
that he was afraid of being arrested, so he chopped up her body with a machete and disposed of
it.
      The medical examiner testified at trial that Cecilia's death was caused by a stab wound
through her neck made with a sharp instrument. He further testified that he observed a bruise on
her head but that the head injury was not the cause of death.
      The trial court initially agreed that an involuntary manslaughter instruction should be given
but, after the jury had been partially charged on the elements of involuntary manslaughter, decided
to remove it from the charge.
      Article 37.09, Texas Code Criminal Procedure, provides in pertinent part: "An offense is a
lesser included offense if (1) it is established by proof of the same or less than all facts required
to establish the commission of the offense charged." The indictment here charged that Appellant
intentionally and knowingly caused the death of Cecilia Reyes by stabbing her with a deadly
weapon.
      Thus under Article 37.09(1), the offense of involuntary manslaughter is a lesser-included
offense of murder as charged in the indictment, i.e., stabbing Cecilia with a deadly weapon, only
if it can be established by proof of the same or less than all the facts required to establish
commission of the offense charged. Walker v. State, 761 S.W.2d 572, 575 (Tex. App.—San
Antonio 1988).
      An allegation that an offense has been committed in one way may include a lesser offense,
while an allegation that the offense was committed in another way, would not include the lesser
offense. Martinez v. State, 599 S.W.2d 622, 624 (Tex. Crim. App. 1980); Bell v. State, 693
S.W.2d 434, 436 (Tex. Crim. App. 1985); Walker v. State, supra.
      The indictment here alleged Appellant caused the death of Cecilia by stabbing her with a sharp
instrument, a deadly weapon. Involuntary manslaughter by pushing Cecilia is not a lesser-included offense of murder by stabbing Cecilia with a deadly weapon. The trial court did not err
in failing to instruct the jury on involuntary manslaughter.
      Appellant asserts in point five that the trial court erred in partially charging the jury on
involuntary manslaughter, and then removing the issue from the charge.
      A trial court may, at any time before the verdict, withdraw and correct its charge if convinced
that an erroneous charge has been given; and a trial court may at any time amend its charge in
order to correctly state the law. Smith v. State, 898 S.W.2d 838 (Tex. Crim. App. 1995). 
Appellant's points four and five are overruled.
      In points six and seven Appellant contends the trial court committed reversible error by
admitting into evidence numerous gruesome and duplicative photographs of the crime scene and
the autopsy. Appellant claims the photographs were cumulative of other photographs which had
been admitted and could only serve to inflame the jurors against Appellant without assisting in any
resolution of the contested issues in the case.
      Rule 403 of the Texas Rules of Criminal Evidence provides:
Although relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or misleading
the jury, or by considerations of undue delay or needless presentation of cumulative
evidence.

      The approach under Rule 403 is to admit relevant evidence unless its probative value is
substantially outweighed by the dangers of unfair prejudice, confusion of the issues, misleading
the jury, causing undue delay or needless presentation of cumulative evidence. The rule favors
admissibility of the relevant evidence, and the presumption is that relevant evidence will be more
probative than prejudicial. When admitting evidence, the trial judge does not sua sponte engage
in balancing the probative value against the prejudice, but only does so upon sufficient objection
invoking Rule 403 by the party opposing admission of the evidence. Long v. State, 823 S.W.2d
259, 271 (Tex. Crim. App. 1991).
      Exhibits 14 and 16 are photographs of the torso and head of the deceased which had probative
value as being photographs by which her husband made his identification of the recovered body
parts as belonging to his deceased wife.
      Exhibits 22, 24 and 25 depict the right arm and two views of the torso which were the first
body parts recovered the day after the murder.
      Exhibits 85 and 86 depict the body parts in the two packages as they appeared when recovered
after Appellant lead the police to them.
      Exhibits 93, 101, 102 and 104-108 are autopsy photographs the medical examiners used to
explain the injuries suffered by the deceased as well as the cause of death.
      The cause of death was a contested issue which required the State to prove the stab wound to
the neck as the cause of death. The trial court did conduct a weighing analysis in regard to the
autopsy photographs and stated that the gruesomeness of the photographs was due to the fact that
Appellant cut the body of the deceased into five parts, and the trial court specifically found that
the probative value outweighed this prejudicial effect. The photographs admitted are analogous
to the photographs found to be properly admitted in Long v. State, supra, at page 273.
      The most grievous aspect of this case, as depicted in the photographs, was the mutilation
which Appellant admitted he had done. Points six and seven are overruled.
      Points eight and nine complain of the prosecutor's jury argument which Appellant asserts
deprived him of a fair trial as guaranteed by the Federal and State constitutions. Specifically,
Appellant asserts the prosecutor's argument that Appellant "kidnapped the deceased at gunpoint
at her van and forced her to go to his apartment," and later, "that the deceased was forced, that
she went to his place at gunpoint, probably; we know he had a gun," and in the punishment phase,
"we know the deceased did not go there [to his apartment] voluntarily."
      The first complained of argument was invited. Counsel for Appellant first brought up the
subject of the possibility of Appellant having abducted the deceased at gunpoint when he
previously argued, "I know he's going to argue this, there were pistols found in his bedroom. He
can argue that you could consider; that he came over there and put a gun on her and made her
drive him over to his apartment." Invited argument is permissible. Pemberton v. State, 601
S.W.2d 333, 338 (Tex. Crim. App. 1980). Moreover the argument was a reasonable deduction
from the evidence.
      As to the second and third instances of complained-of argument, the trial court sustained
Appellant's objections to same and instructed the jury to disregard. Also, the arguments were both
permissible as being reasonable deductions from the evidence, and responses to prior arguments
of Appellant's counsel. Points eight and nine are overruled.
      Point eleven 


 asserts the trial court committed reversible error in instructing the jury that the
defendant could be convicted of murder if he intended to engage in clearly dangerous conduct that
resulted in the victim's death.
      At the guilt-innocence stage the trial court instructed the jury in pertinent part:
A person intentionally, or with intent, with respect to the nature of his conduct or
to a result of his conduct when it is his conscious objective or desire to engage in the
conduct or cause the result.
A person acts knowingly, or with knowledge, with respect to the nature of his
conduct or to circumstances surrounding his conduct when he is aware of the nature of
his conduct or that the circumstances exist. A person acts knowingly, or with
knowledge, with respect to a result of his conduct when he is aware that his conduct is
reasonably certain to cause the result.
. . . .
Now, if you find from the evidence beyond a reasonable doubt that on or about the
26th day of March 1991, in Harris County, Texas, the defendant Gerardo Marquez, did
then and there unlawfully, intentionally or knowingly cause the death of Cecilia Reyes,
by stabbing Cecelia Reyes with a deadly weapon, namely, a sharp object which is
unknown to the Grand Jury, and that the defendant in so acting, was not acting under the
immediate influence of sudden passion arising from an adequate cause, or if you find
from the evidence beyond a reasonable doubt that on or about the 26th day of March
1991, in Harris County, Texas, the defendant Gerardo Marquez, did then and there
unlawfully intend to cause serious bodily injury to Cecilia Reyes, and did cause the death
of Cecilia Reyes by intentionally or knowingly committing an act clearly dangerous to
human life, namely, by stabbing Cecilia Reyes with a sharp object which is unknown to
the Grand Jury, and that the defendant in so acting, was not acting under the immediate
influence of sudden passion arising from an adequate cause, then you will find the
defendant guilty of murder as charged in the indictment.
      The application paragraph of the charge clearly required the jury to find Appellant
intentionally or knowingly caused the death of the complainant by stabbing her, or that Appellant
intended to cause serious bodily injury to the complainant and that Appellant intentionally or
knowingly committed an act clearly dangerous to human life by stabbing the complainant. The
application paragraph of the charge clearly required the jury to find that Appellant acted
intentionally or knowingly with respect to the result of his actions.
      It was the State's theory that Appellant committed murder with the intent to cause the
complainant's death; and that Appellant killed the complainant by stabbing her in the neck with
a knife. The autopsy revealed that she was killed by being stabbed with a very large knife that
went all the way through her neck. The trial court did not reversibly err in the charge to the jury. 
Point eleven is overruled.
      Point twelve asserts the trial court committed reversible error by denying Appellant's Batson
objections to the prosecutor's discriminatory use of peremptory challenges to exclude minority
jurors. As noted, the trial court refused to hear reasons why the prosecutor struck black members
of the panel. This court abated the appeal and remanded the cause for a full Batson hearing. On
remand the trial court conducted a Batson hearing and the record here has been supplemented. 
Appellant objected to the exercise of peremptory challenges to jurors #6, #16, and #33, all black
members of the panel. 
      When this occurs the State must articulate race-neutral reasons for striking the jurors. The
State offered the following race-neutral reasons for striking the jurors:
Juror #6 had a close fiend who was murdered a year ago and was too quick in
answering the questions concerning bias and prejudice.
Juror #16 appeared to be asleep during voir dire; her pastor's son had been in trouble
with the law; also she had worked for CPS and jurors who have been social workers tend
to be rehabilitatively oriented.
Juror #33 was closing her eyes during voir dire, was fighting falling asleep and did
fall asleep.
      The trial court held that the reasons offered by the State were race-neutral and that no Batson
error had occurred.
      When a prosecutor presents a racially neutral explanation for exercising a peremptory
challenge against a minority veniremember, the defendant is required to rebut that racially-neutral
explanation which the Appellant did not do here. Williams v. State, 804 S.W.2d 95, 97 (Tex.
Crim. App. 1991).
      If, after viewing the evidence in the light most favorable to the trial court's ruling, it is
determined that the explanations provided by the prosecutor have not been rebutted by the
defendant, an appellate court should uphold the trial court's finding that the prosecutor did not
engage in purposeful racial discrimination in the exercise of his peremptory challenges. Williams
v. State, supra, at 101.
      The State offered racially-neutral reasons for striking the minority jurors, and Appellant did
not rebut same. The trial court did not err in holding that no Batson violations occurred. Point
twelve is overruled.
      The judgment is affirmed.
 
                                                                               FRANK G. McDONALD
                                                                               Chief Justice (Retired)

Before Justice Cummings, 
      Justice Vance, and
      Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed September 13, 1995
Do not publish